**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

BEST VENDORS CO., a Minnesota corporation d/b/a Best Vendors Co.,

Plaintiff,

v.

AIR EXPRESS, INC., a Massachusetts corporation; and MASS AIR SYSTEMS

Defendants.

Civil No. 00-2224 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Mark D. Wisser and Joseph W. Anthony, ANTHONY OSTLUND & BAER, P.A., 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for plaintiff.

Tim A. Staum and Sarah G. Mulligan, MACKALL, CROUNSE & MOORE, PLC, 1400 AT&T Tower, 901 Marquette Avenue South, Minneapolis, MN 55402, for defendants.

Plaintiff Best Vendors Company ("Best Vendors"), a Minnesota corporation, has sued defendants Air Express, Inc. ("Air Express"), a California corporation, and Mass Air Systems ("Mass Air"), a Massachusetts corporation, for breach of contract and for declaratory judgment under 28 U.S.C. § 2201. Defendants have filed counterclaims alleging recoupment, wrongful termination of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. This matter is now before the

SEP 2

FILED

RICHARD D. SLETTEN, CLERK

JUDGMENT ENTD.

DEPUTY CLERK

Court on plaintiff's motion for summary judgment on its declaratory judgment claim and on all of defendants' counterclaims. For the reasons discussed below, the Court now grants the motion in part and denies it in part.

## FACTUAL BACKGROUND

Best Vendors manages vending machine operations for large gas station and convenience store chains. Best Vendors enters into contracts with the chains, under which it receives a license to enter a chain's property to install and maintain vending machines. Best Vendors also enters into sublicense agreements with third-party vendors, who actually install and service the machines. This case revolves around Best Vendors' relationship with two third-party vendors and its contracts with Circle K Stores ("Circle K") to manage air, water, and vacuum vending machines.

In August 1996, Best Vendors entered into a written Sublicense Agreement with defendant Mass Air, under which Mass Air would maintain machines at certain Circle K stores. In March 1997, Best Vendors entered into a similar agreement with a company called Cactus Air to service other Circle K locations. The sublicense agreements with these companies (the "Agreements") contained forum-selection and choice of law clauses that brought this lawsuit to Minnesota.

In mid-1998, defendant Air Express purchased Cactus Air. In September 1998, several months after learning of this acquisition, Best Vendors sent a new Sublicense Agreement to Air Express, which never signed the Agreement. Air Express never rejected the contract, however, and continued to perform its obligations under the

Agreement, including operating the machines at its assigned Circle K locations, and paying the same commissions according to the same schedule required of other sub-licensees.

On July 31, 2000, Best Vendors' three-year contract with Circle K ended, and Best Vendors entered into a new contract with Circle K and a new third-party vendor. On August 22, 2000, Best Vendors notified Air Express and Mass Air that it was terminating their Sublicense Agreements. The letter gave 30 days notice, and included a phased removal schedule that permitted defendants to remove their machines over a four-month period. Defendants objected, so Best Vendors delayed the termination. In November 2000, Best Vendors sent revised termination letters to each defendant, giving new removal schedules of 120 days. After receiving these termination notices, defendants stopped paying commissions to Best Vendors, even though they still operated machines at Circle K stores.

Best Vendors seeks summary judgment on all of defendants' counterclaims: recoupment, wrongful termination of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. Plaintiff also seeks summary judgment on its declaratory judgment claim, which requests the following declarations:

(a) The Sublicense Agreements with Air Express and Mass Air are terminable, without cause, on 20 days written notice by either party.

(b) To the extent that Best Vendors' contractual relationship with Air Express or Mass Air is governed in whole or in part by an oral agreement, the agreement is terminable at will upon reasonable notice.

(c) Best Vendors validly terminated its Sublicense Agreements with Mass Air and Air Express.

(d) The defendants were required to remove their machines in accordance with the removal schedules provided by Best Vendors, and Best Vendors was authorized to remove the machines itself if defendants did not.

(e) Defendants breached the Sublicense Agreements by refusing to comply with the proper terminations by Best Vendors.

(f) One or both defendants breached the Sublicense Agreements by contacting Circle K and seeking to compete with Best Vendors within 60 days of termination of the Sublicense Agreements.

(Complaint ¶ 28.)

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Best Vendors' Declaratory Judgment Claim

Best Vendors claims that the Agreements with Air Express and Mass Air are unambiguous contracts, and that defendants should be bound by their written terms. In particular, Best Vendors notes that the Agreements allowed either side to terminate the contract at will,[1] and that the parties explicitly assumed the risks and costs of termination.[2]

---

[1] The Agreements contained a termination provision, which provided that "[e]ither party may terminate the agreement at will upon 20 days prior written notice." (Complaint Ex. A ("Agreement") § 17(a).)

[2] Section 17(c) of the Agreements provided that the parties' "right of termination . . . is absolute, and the parties have considered . . . the possible losses and damages incident to them in the event of termination." (Agreement § 17(c).) The Agreements also provided, in all capital letters, that "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR DAMAGES IN ANY FORM BY REASON OF ANY TERMINATION OF THIS AGREEMENT . . . ." (*Id.*)

**A. Air Express**

Best Vendors argues that Air Express is bound by the written agreement it received in September 1998, even though it was never signed. First, Best Vendors claims that Air Express is bound by the Agreement because it is the assignee of Cactus Air, and assumed all of Cactus Air's contractual obligations when it bought that company. Second, Best Vendors claims that under the Agreement's terms, Air Express accepted the Agreement by its continued performance.[3] Indeed, it is undisputed that Air Express continued maintaining equipment at its assigned Circle K stores, making payments, and even renegotiating the payment schedule with Best Vendors. This, Best Vendors claims, is sufficient to constitute acceptance under the Agreement.

Finally, Best Vendors argues that even if it had no valid written agreement with Air Express, termination was still appropriate because commercial contracts that are silent about duration or termination are terminable at will. *See Benson Cooperative Creamery Ass'n v. First Dist. Ass'n*, 151 N.W.2d 422, 426 (Minn. 1967); *Dorso Trailer Sales, Inc. v. American Body & Trailer, Inc.*, 372 N.W.2d 412, 414 (Minn. Ct. App. 1985). Best Vendors also notes that it gave both defendants thirty days notice, which was more than the contractually-required amount.

Defendants argue that Air Express had no written contract with Best Vendors, and that its only agreement with Best Vendors consisted of the arrangements worked out orally, in writing, and through the course of dealing between the parties. First,

---

[3] Section 1 of the Agreement provides that: "[i]nstallation or operation of machines within any facility subsequent to the receipt of this Agreement shall constitute acceptance . . . ."

defendants claim that the Agreement with Cactus Air was modified before Air Express even bought that company. Specifically, defendants claim that Best Vendors promised not to terminate the Agreement unless Cactus Air failed to perform satisfactorily. In support, defendants point to a letter from Best Vendors Vice President Kevin Wall to Cactus Air ("Wall letter"). This letter, written in December 1997, notified Cactus Air that Best Vendors had renewed its contract with Circle K, and that the contract would last for at least three years.[4] (*See* Sell Aff. Ex. B.) The letter further stated that Best Vendors intended to retain Cactus Air in the Circle K locations "for this term" – meaning, presumably, for the 36-month term discussed in the letter. (*Id.*) Finally, the letter stated that Best Vendors was retaining Cactus Air based upon its good performance in the past, and that Best Vendors' "retention of Cactus . . . would only be adjusted should the current level of performance change to what would be deemed substandard by our client." (*Id.*)

Second, defendants argue that the original Cactus Air Agreement was further modified by the course of dealing between Best Vendors and Air Express, after it purchased Cactus Air. In particular, defendants point to several negotiated changes in the business arrangement between Air Express and Best Vendors. These included: alleged assurances from Best Vendors that Air Express would retain the Circle K business so long as it performed as requested; changing commission payment schedules and structures; and raising the air machine price to 50 cents, then lowering back to 25 cents

[4] The contract, in fact, lasted exactly three years.

when Circle K objected. Defendants claim that the agreement between Air Express and Best Vendors is found in these and other modifications, not in the terms of the written Sublicense Agreement between Best Vendors and Cactus Air.

The Court must first determine whether Air Express was bound by the original written Agreement between Best Vendors and Cactus Air, either because Air Express was Cactus Air's assignee or because it accepted the terms through continued performance.

Best Vendors is correct that under Minnesota law, an assignee under a contract stands in the shoes of the assignor. *Deutz & Crow. Co., Inc. v. Anderson*, 354 N W.2d 482, 487 (Minn. Ct. App. 1984). Thus, as Cactus Air's assignee, Air Express would generally assume Cactus Air's rights and duties under the Agreement. Best Vendors is also correct that a contract can be accepted by means other than a signature. *See Welsh v. Barnes-Duluth Shipbuilding Co.*, 21 N.W.2d 43, 46-47 (Minn. 1945) (holding that acceptance of a contract can be shown in ways other than a signature); *Vaughn v. Rehab One, Inc.*, 1994 WL 91198 at *2 (Minn. Ct. App. Mar. 22, 1994) ("Assent or mutuality can be shown by the fact that the parties accepted the writing as a binding contract and acted on it as such, even thought it was not signed."); *Sonneman v. Blue Cross & Blue Shield of Minn.*, 403 N.W.2d 701, 704 (Minn. Ct. App. 1987) (holding that conduct may constitute acceptance of an offer).

These accurate citations of law do not answer the entire question, because even if Air Express is bound by the Agreement between its predecessor Cactus Air and Best Vendors, the record does not make clear – as demonstrated by the Wall letter and similar

evidence – whether Cactus Air bargained for an unwritten promise to be terminated only for cause.

Written contracts may be modified by subsequent oral agreements. *Flynn v. Sawyer*, 272 N.W.2d 904, 907 (Minn. 1978); *LaPlanta v. Heidelberger*, 392 N.W.2d 254, 258-59 (Minn. Ct. App. 1986). Such modification, however, must be proven by clear and convincing evidence. *Thoe v. Rasmussen*, 322 N.W.2d 775, 777 (Minn. 1982); *Reliable Metal, Inc. v. Shakopee Valley Printing, Inc.*, 407 N.W.2d 684, 687 (Minn. Ct. App. 1987); *Best Vendors Co. v. Win Stuff, LLC*, Civ. No. 00-523, slip. op. at 6 (D. Minn. Mar. 13, 2000). To obtain summary judgment on its declaratory judgment claim under this rule, Best Vendors must show that the evidence presented by defendants "is of insufficient caliber or quantity to allow a rational finder of fact to find" that each of plaintiff's desired declarations is untrue. *Liberty Lobby, Inc.*, 477 U.S. at 254. The Court finds that Best Vendors has not met this standard.

The Court finds that there is no clear evidence that Air Express and Best Vendors intended to continue the written Agreement with Cactus Air. The absence of a signature, the alleged promises to terminate only for cause, and the apparent renegotiation of the relationship between Air Express and Best Vendors raises a genuine issue of material fact over whether there was a contract, and what the terms of any contract were, including whether it was terminable for cause or at will. *See Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 376 (Minn. Ct. App. 1984) (holding that the existence of a contract, as well as the terms and construction of that contract are questions of fact to be determined by the fact finder). Certainly, Air Express seems to have behaved in many

respects as if the written Agreement still governed. Nevertheless, the Court finds that defendants have raised sufficient factual questions to prevent granting summary judgment to Best Vendors. Therefore, Best Vendor's motion against Air Express will be denied.

**B. Mass Air**

Unlike the situation with Air Express, it is undisputed that Mass Air did have a written agreement with Best Vendors. But as with Air Express, defendants claim that Mass Air's Agreement was subsequently modified by oral assurances from Best Vendors. The court finds, however, that Mass Air's evidence of modification is significantly weaker. Not only did Mass Air clearly sign the Agreement, but defendants offer only the barest evidence of modification. Beyond the testimony of Mass Air's own employees, defendants offer only an August 1997 letter from Best Vendors. This letter notified Mass Air that Best Vendors had retained the Circle K account, and discussed particulars of the new contract. The letter also states: "We look forward to continuing the business between our three companies." (Claypoole Aff. Ex. 2.) Mass Air claims that this statement "reassured" it that the relationship with Best Vendors "would continue and that we would be able to recover [its] investment." (Claypoole Aff. ¶ 7.) The Court finds that this pleasantry is far from enough to demonstrate that the written and signed Agreement was modified to change the rules for termination. This evidence is far from clear and convincing, and the Court determines that no reasonable jury could find that Best Vendors' declaratory judgment claims are not true. *Liberty Lobby, Inc.*, 477 U.S. at 254. Therefore, the Court will grant Best Vendors' motion for summary judgment against

Mass Air. The Court cannot grant summary judgment on all of Best Vendors' desired declarations, however, because two of them, items "e" and "f," essentially allege breach of contract, a claim that is not before the Court. Therefore, the Court will grant summary judgment on items a-d of Best Vendors' declaratory judgment claim against Mass Air.

## III. Defendants' Promissory Estoppel Counterclaim

Defendants have counterclaimed that Best Vendors' allegations are barred by the doctrine of promissory estoppel. The doctrine of promissory estoppel applies only when no contract exists, so success on this counterclaim depends on whether a contract existed between Best Vendors and the defendants. *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981) (holding that promissory estoppel implies a contract in law where none exists in fact); *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 880-81 (Minn. Ct. App. 1995); *UFE, Inc. v. Methode Electronics, Inc.*, 808 F. Supp. 1407, 1410, 1414-15 (D. Minn. 1992).

Because the Court has already determined that a genuine issue of material fact exists as to whether a contract existed between Best Vendors and Air Express, the Court cannot dismiss Air Express's estoppel counterclaim. If a jury finds that no contract existed with Air Express, the jury will be free to determine whether the promissory estoppel claim is valid. Likewise, because the Court has found as a matter of law that a written contract did exist between Best Vendors and Mass Air, the Court must grant Air Express's motion as to Mass Air.

## IV. Defendants' Covenant of Good Faith & Fair Dealing Counterclaim

Defendants also allege that Best Vendors breached the implied covenant of good faith and fair dealing by preventing defendants from enjoying the benefits of their relationships with Circle K, and by unreasonably terminating the Sublicense Agreements. Minnesota law does not recognize an independent claim for breach of the covenant of good faith and fair dealing apart from a breach of contract claim. *Crowell v. Campbell Soup Co.*, 264 F.3d 756, 765 (8th Cir. 2001); *Orthomet, Inc. v. A.B. Medical, Inc*, 990 F.2d 387, 392 (8th Cir. 1993); *International Travel Arrangers v. NWA, Inc.*, 723 F. Supp. 141, 152-53 (D. Minn. 1989). Although none of defendants' counterclaims explicitly alleges breach of contract, one of their affirmative defenses does, and these affirmative defenses were explicitly incorporated into the counterclaims. (*See* Answer & Counterclaims ¶¶ 37, 65.)

Analysis under this standard, like the previous claims, turns to a large extent on whether a contract exists. First, because the Court has determined that the existence of a contract between Air Express and Best Vendors is a matter for the jury, the jury must also therefore decide whether Air Express has a valid breach of covenant claim. Accordingly, the Court will deny Best Vendors' motion for summary judgment on the breach of covenant counterclaim as to Air Express.

The Court has found that a contract did exist between Mass Air and Best Vendors. "Under Minnesota law, every contract contains an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d

494, 502-03 (Minn. 1995); *White Stone Partners, LP v. Piper Jaffray Co., Inc.* 978 F. Supp. 878, 881-82 (D. Minn. 1997) (holding that the covenant requires a party to act in good faith when exercising unlimited discretionary power over a contractual term if necessary to effectuate the parties' intent and save the contract from becoming illusory).

Defendants argue that Best Vendors acted in bad faith toward Mass Air by exercising "unfettered discretion" in requiring various equipment upgrades and other expenditures under the Sublicense Agreement, and then terminating the Agreement with no justification. The Court finds that Best Vendors' alleged actions, if true, would not violate the covenant of good faith and fair dealing. First, defendants have produced no evidence showing that Best Vendors hindered Mass Air in its performance of the Agreement. In fact, it appears that Mass Air continued to perform the Agreement even after Best Vendors sought to terminate. Second, Mass Air has not produced sufficient evidence to demonstrate that Best Vendors did anything to make the Agreement illusory. Unlike the contract in *White Stone Partners*, upon which defendants rely, the Agreement here did not grant Best Vendors unlimited discretion over a relevant contractual term. In *White Stone Partners*, one party was granted unlimited discretion to exercise an "escape clause" by which it could get out of the contract. *See White Stone Partners*, 978 F. Supp. at 881. Here, however, the grounds for termination were clear; the written Agreement provided that either Best Vendors or Mass Air could terminate for any reason upon 20 days written notice. (Agreement § 17(a).) Moreover, the Agreement explicitly acknowledged that the parties considered "the possibility of expenditures necessary for performance" of the Agreement, and "the possible losses and damages incident to them in

the event of termination." (Agreement § 17(c).) This understanding applied equally to both Mass Air and Best Vendors; it gave them mutual power to terminate the contract at will and explicitly ruled out claims of the type that Mass Air now makes.[5] The Court therefore finds that no reasonable jury could find for defendants on this question. Therefore, the Court will grant Best Vendors' motion for summary judgment on the breach of covenant counterclaim as to Mass Air.

## V. Defendants' Wrongful Termination Counterclaim

Defendants argue their Wrongful Termination counterclaim in terms of unconscionability. They claim that the Sublicensing Agreements are contracts of adhesion, and therefore unenforceable. A contract of adhesion is one "drafted unilaterally by the business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Vierkant v. Amco Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996). Parties to such contracts are "commonly of unequal strength and business knowledge." *Dubbe v. A.O. Smith Harvestore Prod., Inc.*, 399 N.W.2d 644, 647-48 (Minn. Ct. App. 1987) (holding that where both parties are "informed business entities," one of them cannot claim to have been victimized since he

[5] The Agreement provided:

> "IT IS UNDERSTOOD AN AGREED THAT NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR DAMAGES IN ANY FORM BY REASON OF ANY TERMINATION OF THIS AGREEMENT IN ACCORDANCE WITH THE TERMS HEREOF **INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS RELATING TO OR ARISING OUT OF [Mass Air's] EXPECTED FUTURE PERFORMANCE UNDER THIS AGREEMENT.**"

(Agreement § 17(c)) (emphasis added).

had "prior experience in commercial dealings."). To prove unconscionability, defendants must demonstrate that: (1) they had no meaningful choice but to deal with Best Vendors and accept the contract as offered; and (2) the Agreements were unreasonably favorable to Best Vendors. *RJM Sales & Marketing v. Banfi Prod. Corp.*, 546 F. Supp. 1368, 1375 (D. Minn. 1982). In other words, a contract is unconscionable if it is one that "no man in his senses and not under delusion would make on the one hand, and [that] no honest and fair man would accept on the other." *Vierkant*, 543 N.W.2d at 120.

In the present case, neither defendant has shown that it had no meaningful choice but to deal with Best Vendors. Defendants' main argument is that the market for air, water, and vacuum equipment was saturated, and they had few other choices given market circumstances. The court rejected similar reasons in *RJM Sales*. *See RJM Sales*, 546 F. Supp. at 1375 (rejecting contention that a contract was unconscionable because "the opportunity to take advantage of [the other party's] national market power presented no other choice than to accept the deal on [that party's] terms") (brackets omitted). Here, as in *RJM Sales*, the facts do not indicate that Best Vendors and defendants had "grossly superior bargaining power." *Id.* Furthermore, Air Express and Mass Air are "informed business entities" with significant "experience in commercial dealings." *Dubbe*, 399 N.W.2d at 647-48. Both defendants had experience with Best Vendors and in the industry, and the Agreements left them free to terminate the agreements at any time, for any reason. The doctrine of unconscionability was designed to protect vulnerable or ignorant parties; defendants are neither. Therefore, the Court will grant Best Vendors'

motion for summary judgment on defendants' wrongful termination counterclaim as to both defendants.

## VI. Defendants' Recoupment Counterclaim

Defendants argue that Best Vendors' terminated the contracts without giving them a reasonable amount of time to recoup their investment in the sublicense, which included many expenses mandated by Best Vendors.

"The doctrine of recoupment is designed to remedy the inequity which arises when a manufacturer, after having required a distributor to make a sizeable investment in the furtherance of a distributorship, terminates the working relationship without just cause, leaving the distributor with substantial unrecovered expenditures." *Ag-Chem Equip. Co. v. Hahn, Inc.*, 480 F.2d 482, 486 (8th Cir. 1973). The doctrine applies to agreements that "do not contain provisions for duration or termination," which are generally held to be terminable at will by either party upon reasonable notice. *McGinnis Piano & Organ Co. v. Yamaha Int'l Corp.*, 480 F.2d 474, 479 (8th Cir. 1973). *See Sofa Gallery, Inc. v. Stratford Co.*, 872 F.2d 259, 262 (8th Cir. 1989) (stating that the recoupment doctrine applies to contracts "having no definite duration"). Minnesota law implies a "reasonable duration" in such agreements, and measures reasonableness "by the length of time reasonably necessary for a dealer to recoup its investment." *Sofa Gallery*, 872 F.2d at 261-62.

A threshold question for this Court is whether the recoupment doctrine applies to the Sublicense Agreements between Best Vendors and defendants. As noted above,

Section 17(a) of the Agreements provides that they are terminable at will by either party upon 20 days written notice. The Court must determine whether this provision triggers the recoupment doctrine. Defendants argue that because the Agreements are terminable at will, they have "no definite duration," even though they do provide for notice of termination. The Third Circuit applied a similar rationale when applying Minnesota law in *Schultz v. Onan Corp.*, 737 F.2d 339 (3d Cir. 1989). There, the court held that a contract could trigger recoupment whether or not the "at-will" term was express or implied. *Id.* at 347.

It is not clear that the cases support such an "open-ended" view of the recoupment doctrine. *See Retail Assoc., Inc. v. Macy's East, Inc.*, 245 F.3d 694, 698 (8th Cir. 2001) (questioning, in dicta, whether the *Schultz* approach was valid). Defendants argue that "cases from [the Eighth] Circuit hold that contracts with notice periods . . . are subject to recoupment claims." (Def. Mem. at 25.) This Court has examined defendants' authorities, and finds that this assertion is incorrect. Decisions in the Eighth Circuit – including those cited by defendants – have **not** applied the recoupment doctrine when the contract provides for termination, even if that provision merely states that the contract is terminable at will. *See, e.g.*, *Waldor Pump & Equip. Co. v. Envirex, Inc.*, Civ. No. 92-702, 1993 US Dist LEXIS 13315 at **20-21 (D. Minn. May 12, 1993), *aff'd*, 29 F.3d 628 (8th Cir. 1994) (holding that recoupment doctrine does not apply when contract provided for termination at will upon 30 days written notice, and such notice was actually given). *See also Sofa Gallery*, 872 F.2d at 261-61 (applying recoupment doctrine to an oral contract that made no commitment regarding duration or termination); *McGinnis*, 480

F.2d at 477, 479 (applying recoupment to an oral contract that had no "understanding" as to termination or duration); *Ag-Chem*, 480 F.2d at 485, 487 (applying recoupment to relationship based on oral agreements with no termination provision). In the one case cited by defendants that involved an explicit termination provision, the Court held that the plaintiff was not eligible for recoupment, because it had not incurred any relevant expenses; the court never reached the question of whether the termination provision triggered recoupment. *See RJM Sales*, 546 F. Supp. at 1376.

This survey of case law indicates that the Third Circuit's reading of Minnesota law in *Schultz* was incorrect. The Court believes that the recoupment doctrine does not apply to agreements with express "at-will" provisions, but only to agreements that literally "do not contain provisions for duration or termination." *McGinnis*, 480 F.2d at 479. This view is bolstered by a recent Eighth Circuit ruling which, though applying New York law, criticized the Third Circuit's interpretation of Minnesota's recoupment doctrine. *See Retail Assoc.*, 245 F.3d at 697-98. The Eighth Circuit stated that under *Schultz*'s approach, "the right to equitable recoupment is divorced from breach-of-contract analysis, and recoupment becomes a device by which judges may rescue a party from its bad bargain by taking money away from the other party, whose conduct has been wholly lawful." *Id.* at 698. Although this is dicta, the Court finds its reasoning persuasive, and indicative of how the Eighth Circuit may rule if presented with the question addressed in *Schultz*. Moreover, the Court's can find no Eighth Circuit authority supporting defendants' argument that recoupment applies to the written Sublicense Agreements here, which do address notice and termination. Therefore, the Court determines that

Minnesota's recoupment doctrine does not apply to the written Sublicense Agreements in this case. Accordingly, the Court will grant Best Vendors' motion for summary judgment on the recoupment counterclaim as to Mass Air.

The record also strongly suggests that summary judgment should be granted as to Air Express. Although the existence and content of a contract between that defendant and Best Vendors are in doubt, it seems that no outcome would result in applicability of the recoupment doctrine. Air Express argues that its Agreement may only be terminated for cause; in such a case recoupment clearly does not apply. Best Vendors, on the other hand, argues that Air Express is bound to the written Agreement, and the Court has determined that recoupment does not apply to that document. Nevertheless, because there is so much ambiguity about the agreement between Air Express and Best Vendors, the Court cannot state with certainty that no reasonable jury could find an agreement that entitles Air Express to recoupment. Therefore, the Court will deny Best Vendors' motion for summary judgment on the recoupment counterclaim as to Air Express.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 55] is **GRANTED IN PART and DENIED IN PART** as follows:

1. Plaintiff's Motion for Summary Judgment against defendant Air Express is **GRANTED** as to Count II of defendants' Counterclaims (Wrongful Termination). In all other respects, plaintiff's motion as to defendant Air Express is **DENIED.**

2. Plaintiff's Motion for Summary Judgment against defendant Mass Air is **DENIED** as to items (e) and (f) in Paragraph 28 of plaintiff's Complaint. In all other respects, plaintiff's motion as to defendant Mass Air is **GRANTED**.

DATED: September 23, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge